HALLOCK *v.* ECONOMY DRAWING TABLE CO.

1. MASTER AND SERVANT—BONUS CONTRACT—ACCOUNTING.
   In a suit by an employee for an accounting under a bonus contract, where depreciations had been entered on the employer's books as losses when the government canceled its contract with defendant on the signing of the armistice, the money received in settlement from the government, which included the depreciations, should have been placed on its books as credits.

2. ESTOPPEL—MASTER AND SERVANT—ACCOUNTING.
   That an employee of a corporation, who was its vice president and general manager, represented to the government that the corporation's losses were in excess of the amount finally allowed in settlement, would not estop him from seeking to subject the amount received from the government to the provisions of his bonus contract with the corporation.

Appeal from Lenawee; Hart (Burton L.), J.  Submitted April 4, 1923.  (Docket No. 19.)  Decided June 4, 1923.

Bill by Harold H. Hallock against the Economy Drawing Table & Manufacturing Company for an accounting.  From a decree for plaintiff, defendant appeals.  Affirmed.

*Charles L. Robertson* and *James H. Cornelius,* for plaintiff.

*Baldwin & Alexander,* for defendant.

McDONALD, J.  This action is brought for an accounting and to recover an interest in a bonus contract.  At the time the controversy arose the plaintiff was vice president and general manager of the de-

fendant company. The company was engaged in the manufacture of drawing tables and other articles of similar character, with its principal place of business at the city of Adrian, Michigan. In June, 1918, it entered into a contract with the government for the manufacture of 1,000,000 pick handles. In order to carry on this contract it became necessary for the company to enlarge its plant at Adrian, and to purchase another plant at Palmyra, in Lenawee county, Michigan. To stimulate production it arranged a bonus or compensation plan for its employees, notice of which was posted in its factory. This plan provided that when its gross net earnings should amount to $12,000, it would pay 10% of these earnings to its employees; and for every $6,000 increase in the earnings the amount to be paid to the employees was increased by 5%. The contract with the government was canceled when the armistice was declared on the 11th day of November, 1918. At this time the company had manufactured about half the number of pick handles specified in the contract. After the termination of the contract the plaintiff herein, acting for the company, made a claim to the government of $74,680 for loss resulting from the cancellation. During the negotiations which followed, various other claims for lesser amounts were made and sworn to by the plaintiff. The government finally settled for $27,250. This was not carried on the books of the company as a loss, nor charged on the books as a loss when received. The books show that at the end of the first six months of the period when the bonus was in effect there was a profit of $280.64, and at the end of the second six months a loss of $6,620.58. The controversy arose over the application to be made of the $27,250 received from the government. The plaintiff contends that it should have been placed on

the books as a credit, and that if this had been done the loss would have been wiped out leaving a profit of $20,920, 15% of which belonged to the employees under the bonus contract.   The defendant contends that the amount received from the government represented but a small portion of its loss; that it was an actual loss, should be so charged, and that no part of it could be applied in the payment of a bonus to the employees. No account was carried with the government.   The circuit judge concluded that the $27,250 should be applied as a credit on the books of the company, and that if so applied there would appear a profit of $20,920 which would be subject to the provisions of the bonus contract, and that plaintiff's distributive share would amount to $300.   From a decree entered for plaintiff the defendant has appealed.

The only question presented by the record is whether the $27,250 received from the government should be charged on the defendant's books as a loss or as a credit.   It does not appear that the plaintiff claims this amount was a profit, but that it represented depreciations which had been charged on the books, and that therefore when they were paid by the government they should have been placed on the books as credits.   The defendant insists that the amount received from the government was for losses and it should go on the books as a loss.   The question in issue must be determined from an examination of the books of the defendant at the close of the bonus contract period, June, 1919, and from the cancellation settlement made with the government.   An examination of the settlement agreement will show that the government allowed $6,840 for depreciation on 400 cords of bolts; it allowed the cost price; it allowed for cutting and handling, for freight and hauling, for purchasing expense and overhead, and deducted $5

a cord or $2,000 for salvage.    The bolts were carried on the books of defendant at cost; the books also show charges for cutting and hauling, freight, purchasing expense and overhead.    These charges entered into the profit and loss account.    The government paid them.    The company received that much money as against what it had charged on the books.    The receipt of $6,840 to that amount, offset the charges which helped to create the loss shown by the books. It is clear that this payment should be entered as a credit.    The same thing is true of the $12,365, allowance for depreciation on logs.    The defendant was paid for the cost of the logs less the salvage; it was paid the cost of cutting and handling, freight and hauling, purchasing expense and overhead.    The company carried charges on its books covering the items which the government allowed and paid.    When payment was received it should have been credited against these charges.    We do not deem it necessary to refer to all of the items in the cancellation settlement.    It clearly enough appears that the depreciation and loss charged on the books were to a large extent included in that settlement.    If so they should not again be charged in the same way, but should appear as credits.    What the government paid was for depreciation.    Whether it paid for the entire depreciation, as shown by defendant's books, is not here important.    To the extent that it did pay the amount should be credited.    Before the settlement was made the defendant company seems to have intended to charge the amount when received to sales so that the books would show sufficient earnings to permit of the payment of a dividend to its stockholders and a bonus to its employees.    Out of the amount received it did pay a dividend of $4,400 and a bonus of $1,200 covering the first six months of the year.    This bonus could

only be allowed on a gross earnings basis of $12,000 for that period. These facts lend color to the testimony of the plaintiff that, in anticipation of the receipt of a check from the government, he and other directors figured over the depreciations and losses, and caused them to be entered on the books of the company with the idea that when the government made payment the amount received could be considered as actual earnings and entered on the books as sales. It was in fact so entered. We think the evidence sustains the plaintiff's claim and that he is entitled to a decree in the amount determined by the court.

We have considered but do not discuss the claim of the defendant that the plaintiff is estopped from seeking to subject the amount received from the government to the provisions of the bonus contract, because as an officer and manager of the company he had previously made the claim to the government, in behalf of the company, that its losses were much in excess of the amount finally allowed. Clearly, as to the facts and circumstances of this case, the doctrine of estoppel has no application.

The decree of the circuit judge is affirmed. Plaintiff will have costs.

WIEST, C. J., and FELLOWS, CLARK, BIRD, SHARPE, MOORE, and STEERE, JJ., concurred.